UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN, | No. 2:19-cv-0406 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| MARIANA LOTERSZTAIN, M.D., et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel. Two motions filed by plaintiff are pending: a motion to exclude opinion testimony of expert Dr. Burgar under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ("Daubert I"); and a motion for discovery. Defendant Lin opposes both motions. As set forth below, plaintiff's motions are denied, and plaintiff is directed to file his oppositions to defendants' pending motions for summary judgment.

I. Motion to Exclude

    A. The Parties' Arguments

        Plaintiff's Motion

Plaintiff seeks to exclude the opinion testimony of defendant Lin's expert witness, Alexandra Burgar, "on the basis that the opinion testimony is not based on sufficient facts or data, is not grounded in medical science, is unexplained and unhelpful, and is not sufficiently reliable

to withstand scrutiny under Rule 702." (ECF No. 59 at 1.)  He contends Dr. Burgar failed to set forth the standard of care and is therefore not relevant, and failed to explain her methodology or provide any peer consensus or medical literature to support her conclusion that splinting was the appropriate treatment for a comminuted intra-articular fracture of the fourth proximal phalanx. (ECF No. 59 at 3, 5-6.)  Plaintiff objects that Dr. Burgar failed to explain the potential severity of the fracture and how it impacted treatment options, the effect of the time lapse on the treatment options, whether the initial treatment was beneficial or harmful, or how the nature and extent of plaintiff's injury impacted the course of treatment.  (ECF No. 59 at 3.)

Plaintiff argues that Dr. Burgar's opinion testimony is not good science and does not advance Dr. Lin's malpractice defense because her opinion is conclusory and fails to provide any factual basis, simply providing "her bald 'assurances of reliability.  Under Daubert, that's not enough.'"  (ECF  No. 59 at 6) (quoting Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) ("Daubert II").  Specifically, plaintiff seeks to strike (id. at 7) paragraphs 4, 7 and 8 of Dr. Burgar's declaration:

> 4. It is my opinion that Dr. Lin complied with the standard of care with respect to the care and treatment he provided to Mr. Witkin. Specifically, Dr. Lin's examination and x-ray images revealed a comminuted and intra-articular fracture of the fourth proximal phalanx, with mild degenerative changes. Given Dr. Lin exam findings, the x-ray report, and the history of the injury, Dr. Lin's determination at the time that surgery was not more likely to provide a better result than splinting was correct, and consistent with the standard of care. Moreover, surgery on Mr. Witkin's finger could have resulted in a worse outcome for Mr. Witkin, and therefore splinting was the preferred course.
>
> 7. The care and treatment provided to Mr. Witkin by Dr. Lin complied in all respects with the standard of care.
>
> 8. Given the location of Mr. Witkin's fracture, the type of fracture, and his pre-existing arthritis (documented on his x-ray as degenerative changes), the finger deformation, loss of function, and improper healing claimed by Mr. Witkin was, more likely than not, a result of the initial fracture, and not the medical care, or any lack of medical care, on the part of Dr. Lin.

(ECF No. 55-2 at 120-21.)

<u>Defendant's Opposition</u>

Defendant Lin opposes plaintiff's motion, arguing that Dr. Burgar's declaration

2

establishes that she is a physician with extensive experience and knowledge in treating conditions affecting the bones, muscles, nerves and tendons of the hand, and her opinions are based on a review of plaintiff's pertinent medical records, plaintiff's deposition, and Dr. Lin's declaration. (ECF No. 63 at 5-6.) Such review supported Dr. Burgar's conclusion that Dr. Lin's care was consistent with the standard of care for treating plaintiff's fracture. The standard of care is a central issue in this case and is not a matter within the general knowledge of lay people. Thus, Dr. Burgar's declaration should be admitted because there is sufficient evidence to support its reliability and her testimony will assist the trier of fact to understand the issue.

Defendant argues that Dr. Burgar was not required to address potential treatment or findings that Dr. Lin could have made that also would have complied with the standard of care; rather, the issue here is whether the treatment Dr. Lin actually provided complied with the standard of care. If Dr. Burgar had concluded that Dr. Lin did not recommend the appropriate treatment, then Dr. Burgar would have likely needed to state what treatment she would have recommended. But because Dr. Burgar found that Dr. Lin's decision complied with the standard of care, she was not required to identify all decisions that would have complied with the standard of care. Defendant contends that "[b]y stating that the treatment Dr. Lin provided was one which is in compliance with the standard of care, she has articulated what treatment would comply with the standard." (ECF No. 63 at 6.)

Further, to the extent plaintiff argues that Dr. Burgar failed to consider relevant information or might have been able to obtain more complete information, such facts go to the weight to be given to her opinions, not the admissibility of her opinions. (ECF No. 63 at 6.) (citing see Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.")

Plaintiff's Reply

In reply, plaintiff argues that Dr. Burgar's opinion is a legal opinion created expressly for purposes of testifying, not a medical opinion. Plaintiff contends that Dr. Burgar's declaration

3

fails to explain why splinting was the appropriate course of medical treatment rather than a closed or open reduction of plaintiff's fracture, or explain the facts or clinical circumstances under which splinting would be medically appropriate. (ECF No. 69.) Plaintiff reiterates that Dr. Burgar failed to set forth the applicable standard of care or provide any explanation as to why her experience is a sufficient basis for her conclusory opinion.

B. Governing Standards

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. In evaluating expert opinion testimony, federal courts apply a more flexible Daubert standard. Daubert I, 509 U.S. at 579.[1] Expert testimony is admissible under Rule 702 if the expert is qualified and if the testimony is both relevant and reliable. See Daubert I, 509 U.S. at 597; see also Messick v. Novartis Pharms. Corp., 747 F.3d 1193 (9th Cir. 2014) (finding expert's testimony relevant and reliable, but fact issues precluded summary judgment on products liability claims). Rule 702 contemplates a "*broad conception* of expert qualifications." Hangarter, 373 F.3d at 1018.

Trial courts serve a "gatekeeping" role "to ensure the reliability and relevancy of expert testimony." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (citing Daubert I, 509 U.S. at 579). They should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1044 (9th Cir. 2014). The Daubert I test "is not the correctness of the expert's conclusions but the soundness of his [or her] methodology." Id. "Shaky but admissible evidence is to be

---

[1] California has not adopted the Daubert I standards for admissibility of scientific evidence. O'Neill v. Novartis Consumer Health, Inc., 147 Cal.App.4th 1388, 1397 n.7, 55 Cal.Rptr.3d 551 (2007). Rather, California applies the more rigid standard set forth in People v. Kelly, 17 Cal. 3d 24, 549 P.2d 1240 (1976) (superseded by statute on other grounds) (adopting the Frye test, Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). Because California employs a different standard than Daubert I, the undersigned does not address the California opinions relied upon by plaintiff.

attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). The proponent of the expert testimony has the burden of proving admissibility. Lust By & Through Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

Courts consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his or her asserted expertise. United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000); see also Fed. R. Evid. 702. As to relevance, "[t]he requirement that the opinion testimony assist the trier of fact goes primarily to relevance." Primiano, 598 F.3d at 564. Under the reliability requirement, the expert testimony must have a "reliable basis in the knowledge and experience of the relevant discipline." Primiano, 598 F.3d at 565. To ensure reliability, courts "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." Id. at 564.

On summary judgment, the court should take caution not to confuse the purposes of Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56. Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007). Expert testimony should not be excluded "simply because the court can, at the time of summary judgment, determine that the testimony does not result in a triable issue of fact. Rather the court must determine whether there is a link between the expert's testimony and the matter to be proved." Id. (internal quotes and citation omitted). Under Rule 56(c)(4), the expert must back up his or her opinion with specific facts: "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." Bulthuis v. Rexall Corp., 789 F.2d 1315, 1318 (9th Cir. 1985) (finding doctors' affidavits regarding causation were admissible, but substantial issues of material fact precluded summary judgment).

C. Discussion

"Testimony by physicians may or may not be scientific evidence like the epidemiologic testimony at issue in Daubert [I]." Primiano, 598 F.3d at 565 (noting "much of medical decision-

making relies on judgment -- a process that is difficult to quantify or even to assess qualitatively" and "physicians must use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties" (internal quotation marks and citation omitted)). The Ninth Circuit has explained that "[a] trial court should admit medical expert testimony if physicians would accept it as useful and reliable." United States v. Sandoval-Mendoza, 472 F.3d 645, 655 (9th Cir. 2006) (finding district court abused its discretion in excluding medical expert testimony).

In this case, the court focuses on whether Dr. Burgar has specialized knowledge, whether her declaration is helpful, the facts and data relied upon, and whether her method was reliable under the standard set forth in Daubert I. See Kumho Tire Co., 526 U.S. at 150, 152.

Does Dr. Burgar Have Specialized Knowledge?

Dr. Burgar is an orthopedic specialist, board certified in orthopedic surgery and hand surgery, who was fellowship-trained in hand and microsurgery from 2003 to 2004 after completing her orthopaedic surgery residency in 2003. (ECF No. 55-2 at 123.) She performs arthroscopy and micro-vascular surgeries for a wide range of problems, including fracture care and sports-related injuries. (ECF No. 55-2 at 118.) Such training and her 17+ years of surgical experience is more than adequate to demonstrate Dr. Burgar has specialized knowledge and is qualified to opine on Dr. Lin's care and medical treatment of plaintiff's fractured finger. See Doe v. Cutter Biological, Inc., 971 F.2d 375, 385 (9th Cir. 1982) ("Ordinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor.") Dr. Burgar possesses knowledge of the standard of professional learning, skill and care required of a physician in the fields of orthopedic surgery and hand surgery, and based upon her education, training, experience, and qualifications, she is familiar with the degree of learning and skill ordinarily possessed by reputable medical doctors in such fields in the State of California, including the area where plaintiff was treated by Dr. Lin. In addition, Dr. Burgar is qualified to testify as to whether defendant Dr. Lin's care caused plaintiff harm. Trujillo v. Cty. of Los Angeles, 751 F. App'x 968, 970-71 (9th Cir. 2018) ("Expert witnesses may offer opinions on matters of which they do

6

not have firsthand knowledge so long as it is permissible in their discipline.") (citing Daubert I, 509 U.S. at 592 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.")).

### Is Dr. Burgar's Declaration Helpful?

Plaintiff argues that Dr. Burgar's opinion is not helpful, but the undersigned is not persuaded. Rule 702 requires the court to determine whether the expert's knowledge will help the trier of fact. Fed. R. Evid. 702(a). "The 'will assist' requirement, under Daubert [I], 'goes primarily to relevance.'" Primiano, 598 F.3d at 567 (quoting Daubert I, 509 U.S. at 591); see also United States v. Finley, 301 F.3d 1000, 1013 (9th Cir. 2002) (explaining courts "must be cautious not to overstate the scope of the average juror's common understanding and knowledge" and that "case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge"). "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" Messick, 2014 WL 1328182 at * 2 (quoting Daubert II, 43 F.3d at 1315.

Relevance is determined by the underlying claims and what must be proved. In this case, plaintiff includes a state law professional negligence claim against defendant Dr. Lin. Although the admissibility of expert testimony is governed by the federal rules of evidence, the evidence necessary to prove causation in a medical malpractice action is controlled by state law. Under California law, the elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) a duty to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) resulting loss or damage." Johnson v. Superior Court, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); Hanson v. Grode, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (same). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." Johnson,

143 Cal.App.4th at 305 (internal citations omitted); Jennings v. Palomar Pomerado Health Sys., Inc., 114 Cal. App. 4th 1108, 1119-21, 8 Cal. Rptr. 3d 363, 370-72 (2003). Dr. Burgar's medical training and experience provides her the knowledge to opine whether Dr. Lin's care and medical treatment were within the community standard of care, and Dr. Burgar's analysis is beyond the parameters of a layperson's knowledge and is therefore relevant and helpful to the court.

Sufficient Facts or Data?

Here, Dr. Burgar reviewed plaintiff's medical records from his treatment with Dr. Lin, plaintiff's records from Deuel Vocational Institution, the complaint in this action, plaintiff's deposition, and Dr. Lin's declaration. An expert may form opinions based on facts and data he or she has not personally observed and about which he or she lacks first-hand knowledge. Fed. R. Evid. 703. The facts and data relied on need not even be admissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Id. The undersigned finds that Dr. Burgar relied on sufficient facts to form her opinion. As argued by defendant, Dr. Burgar was not required to evaluate plaintiff's initial treatment at the prison, but was only required to evaluate Dr. Lin's care and medical treatment.

Is Dr. Burgar's Testimony Reliable?

The test for reliability "is not the correctness of the expert's conclusions but the soundness of [the] methodology." Daubert II, 43 F.3d at 1318. Testimony "is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" Sandoval-Mendoza, 472 F.3d at 654, quoting Daubert I, 509 U.S. at 592. A medical expert "certainly may rely on his [or her] own clinical experience in stating his [or her] opinion." McClellan v. I-Flow Corp., 710 F. Supp. 2d 1092, 1138 (D. Or. 2010); see also Primiano, 598 F.3d at 565 (noting "physicians must use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties to mak[e] a sound judgment" (internal quotation marks and citation omitted)). "Medical experts regularly rely on a person's treatment records to form their opinions." Trujillo, 751 F. App'x at 971.

Here, after reviewing all of the records described above, Dr. Burgar used her medical judgment and explained that she based her medical opinion on Dr. Lin's examination and x-ray

images which revealed a comminuted and intra-articular fracture of the fourth proximal phalanx, with mild degenerative changes. (ECF No. 55-2 at 119.)  Dr. Burgar found that Dr. Lin's exam, the x-ray report and the history of the injury supported Dr. Lin's determination that surgery was not likely to provide a better result than splinting, and that surgery could have resulted in a worse outcome for plaintiff. She also opined that "[g]iven the location of [plaintiff's] fracture, the type of fracture, and his pre-existing arthritis (documented on his x-ray as degenerative changes), the finger deformation, loss of function, and improper healing claimed by [plaintiff] was, more likely than not, a result of the initial fracture, and not the medical care, or any lack of medical care, on the part of Dr. Lin." (ECF No. 55-2 at 121.)  Thus, Dr. Burgar's opinion that Dr. Lin's care and medical treatment of plaintiff met the standard of care was "more than . . . bare conclusion[s]." Bieghler v. Kleppe, 633 F.2d 531, 533 (9th Cir. 1980).  Although Dr. Burgar did not describe in detail how she arrived at her opinion, or expressly set forth the standard of care, Dr. Burgar sufficiently disclosed the basis for her conclusion. The record amply demonstrates that Dr. Burgar's opinion is reliable based on her training, knowledge and over seventeen years of specialized experience in orthopedic surgery and hand surgery. See Primiano, 598 F.3d at 565.

Summary

Expert opinion is admissible if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not. Based on the above evaluation under Daubert I, Dr. Burgar's declaration is admissible and will be considered in connection with the pending motion for summary judgment. Under Daubert II, a district court must act as a gatekeeper to exclude "junk science," or expert testimony based only on "[p]ersonal opinion, not science." Daubert II, 43 F.3d at 1319, 1321 n.18. But as a matter of law, the undersigned cannot say that Dr. Burgar's opinion is "junk science" and warrants striking for purposes of summary judgment. See, e.g., Wendell v. Glaxosmithkline LLC, 858 F.3d 1227, 1235 (9th Cir. 2017) ("The Supreme Court in Daubert [I] aimed at screening out unreliable or bogus expert testimony. Nothing in Daubert [I], or its progeny, properly understood, suggests that the most experienced and credentialed doctors in a given field should be barred from testifying based on a differential

diagnosis."). The issues raised by plaintiff properly go to weight, not admissibility. In opposing summary judgment, plaintiff may submit contrary evidence.

This conclusion is bolstered by the holding in Primiano. The district court in Primiano had excluded medical expert testimony partially based on the fact that the doctor had not seen, talked to, or personally examined the plaintiff. Primiano, 598 F.3d at 563. But the Ninth Circuit reversed, finding the testimony admissible, and, as to the admissibility of medical expert testimony, stated:

> A trial court should admit medical expert testimony if physicians would accept it as useful and reliable, but it need not be conclusive because medical knowledge is often uncertain. The human body is complex, etiology is often uncertain, and ethical concerns often prevent double-blind studies calculated to establish statistical proof.

Primiano, 598 F.3d at 565 (internal citation and quotation marks omitted). The court in Primiano specifically rejected the district court's concerns that the testifying doctor did not talk to or personally examine the plaintiff, and that there was no publication supporting his opinions, finding that while "both might be useful to the jury as impeachment," "neither furnished an adequate basis for excluding his opinion." Id. at 567.

Because orthopedic specialist Dr. Burgar is undeniably qualified to render medical opinions, particularly in connection with finger fractures and sports injuries, with over 17 years of pertinent specialized experience, and the medical opinion contained in her declaration is reliable and relevant to the issues in this action, plaintiff's motion to exclude Dr. Burgar's declaration in connection with the pending motion for summary judgment is denied.

II. Motion for Discovery

A. The Parties' Arguments

Plaintiff filed a motion for discovery under Rule 56(d) of the Federal Rules of Civil Procedure. (ECF No. 68.) Plaintiff contends that the facts he needs to oppose the pending motions for summary judgment are in the sole possession of the defendants, and without such facts, plaintiff must take Dr. Lin's deposition. Plaintiff's Eighth Amendment claim is based on his allegation that defendants unduly delayed plaintiff's medical treatment for his fractured finger. Plaintiff claims he needs to know "whether or not 17 days is inside or outside the established

window for performing a closed or open reduction of the fracture." (ECF No. 68 at 3.) In his appended declaration, plaintiff adds that he needs to establish that a trier of fact could infer deliberate indifference by the way the defendants delayed treatment of and treated his fractured finger, and seeks answers to the following questions:

- To be a candidate for a closed reduction of the finger fracture was it necessary for the surgery to take place within a week or ten days from the injury, and if the period could exceed seven to ten days, provide the exact length of time that would be acceptable;
- To be a candidate for an open reduction of the finger fracture was it necessary for the surgery to take place within ten to fourteen days of the injury, and if the period could exceed ten to fourteen days, provide the exact length of time that would be acceptable;
- Provide the reasons a closed reduction of the finger fracture is considered less traumatic than an open reduction;
- Is it correct that an open reduction of the finger fracture results in a significantly more difficult recovery than a closed one, and does it involve greater soft tissue damage and greater resulting stiffness?
- In Dr. Lin's November 12, 2021 declaration, Dr. Lin stated "given the nature of the fracture and its history, I did not believe that surgery would, more likely than not, provide a better outcome than splinting:"
    --Is it correct that at the January 9, 2018 orthopedic consult, Dr. Lin felt that splinting was the better option because the windows for either a closed or open reduction of the fracture had closed?
    --Specifically, what characteristics of the fracture, and what details of its history, made splinting the better option than surgery?
- According to medical literature consensus, what is the longest window in number of days for treating the finger fracture with a closed reduction, and please identify the literature relied upon; and

11

- According to medical literature consensus, what is the longest window in number of days for treating the finger fracture with an open reduction, and please identify the literature relied upon.

(ECF No. 68 at 6.)

Defendant Dr. Lin opposes plaintiff's motion, objecting that plaintiff failed to identify any factual information plaintiff would elicit from Dr. Lin, or any documentary evidence Dr. Lin's deposition would potentially provide. (ECF No. 70 at 1.) Rather, plaintiff improperly seeks Dr. Lin's expert opinions as to the standard of care. Defendant contends that plaintiff must retain his own medical expert to obtain such opinion testimony. Moreover, defendant argues that plaintiff cannot demonstrate he was diligent in seeking discovery and that the discovery sought would likely lead to evidence that could be used to oppose the dispositive motion. Rather, discovery closed on August 30, 2021, and plaintiff failed to notice Dr. Lin's deposition before or after such deadline until filing the instant motion on January 18, 2022, despite knowing that issues related to Dr. Lin's care were central to plaintiff's case against Dr. Lin. Defendant points out that plaintiff already has all of the facts related to his care and treatment and identified no missing facts or documents regarding such care and treatment. (ECF No. 70 at 5.)

Plaintiff did not file a reply.

B. <u>Governing Standards</u>

Rule 56(d) provides:

> (d) If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Pursuant to Federal Rule of Civil Procedure 56(d)(2), if plaintiff shows by affidavit or declaration that for specified reasons he cannot present facts to oppose defendants' motion for

12

summary judgment, the court may defer ruling on the motion to allow time for further discovery. In order to gain a continuance under Rule 56(d), plaintiff must identify by affidavit the specific facts that further discovery would reveal and explain why those facts would preclude summary judgment. Tatum v. City and County of Sacramento, 441 F.3d 1090, 1100 (9th Cir. 2006); Tuvalu v. Woodford, 2007 WL 2900175, at *1-4 (E.D. Cal. Sept. 28, 2007). Plaintiff bears the burden of specifically identifying relevant information, where there is some basis for believing that the information actually exists and demonstrating that the evidence sought actually exists and that it would prevent summary judgment. Blough v. Holland Realty, Inc., 574 F.3d 1084, 1091 n.5 (9th Cir. 2009).

Further, in order to show that facts are "unavailable" for purposes of Rule 56(d), the opposing party must demonstrate previous discovery opportunities were pursued with diligence. Bank of Am. NT & SA v. PENGWIN, 175 F.3d 1109, 1118 (9th Cir. 1999); Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("[T]he district court does not abuse its discretion by denying further discovery [under Rule 56(d)] if the movant has failed diligently to pursue discovery in the past.") (internal quotation marks omitted).

C. Discussion

Initially, to the extent plaintiff is again seeking to have Dr. Lin respond to plaintiff's written questions (ECF No. 68 at 3), the court already denied such request (ECF No. 60).

Rule 56(d) requires that a nonmovant "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. . . ." Fed. R. Civ. P. 56(d). As argued by defendant, the authorities relied upon by plaintiff are inapposite because here plaintiff is attempting to seek the expert opinion of a party, not specific facts or documents. (ECF No. 70 at 3-4.) First, plaintiff identifies no specific facts a deposition of Dr. Lin would uncover; the questions plaintiff sets forth do not elicit facts regarding Dr. Lin's medical care or treatment. Rather, plaintiff seeks to learn Dr. Lin's expert opinion concerning the facts of this case. Unlike in Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518-19 (9th Cir. 1987), where Garrett had timely sought pertinent personnel records solely in the possession of the opposing party, plaintiff claims he needs to ask Dr. Lin whether or not "17 days is inside or

outside the established window for performing a closed or open reduction of the fracture," which seeks Dr. Lin's medical opinion and not information solely within Dr. Lin's possession. Rather, such question could be posed to any competent medical expert. If plaintiff wishes to obtain an expert opinion concerning the facts of this case, plaintiff must retain and depose his own expert.

In addition, plaintiff has access to his own medical records. Plaintiff does not claim that he did not have access to particular medical records or that there are other records he does not have but needs to oppose summary judgment. Plaintiff fails to demonstrate there are specific facts he could discover by deposing Dr. Lin that would raise an issue of material fact in this case.

Second, the remaining cases relied upon by plaintiff confirm that litigants seeking to continue summary judgment motions must demonstrate diligence in previously seeking discovery. (ECF No. 68 at 2.) Here, plaintiff fails to demonstrate such diligence. The first discovery and scheduling order issued on March 15, 2021, and was subsequently modified twice at plaintiff's request. (ECF Nos. 30, 32, 38.) Discovery closed on August 30, 2021. (ECF No. 38.) Plaintiff did not seek to depose Dr. Lin until long after discovery closed and after defendants filed motions for summary judgment.

Plaintiff did not address the issue of diligence in his motion and did not rebut defendant's contention that plaintiff has not been diligent. The undersigned concludes that plaintiff's lack of diligence does not merit the granting of a continuance pursuant to Rule 56(d). See Fed. R. Civ. P. 56(d); see also Tatum, 441 F.3d at 1100.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to exclude the opinion testimony of Dr. Burgar (ECF No. 59) is denied;

2. Plaintiff's motion for discovery (ECF No. 68) is denied; and

3. Within thirty days from the date of this order, plaintiff shall file his oppositions to the pending motions for summary judgment (ECF Nos. 53, 55); defendants' replies, if any, shall be filed fourteen days thereafter.

Dated:  June 22, 2022

/witk0406.dau.dsc

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1