1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL WITKIN,                              No.  2:19-cv-0406 TLN KJN P

12                    Plaintiff,

13          v.                                     FINDINGS & RECOMMENDATIONS

14    MARIANA LOTERSZTAIN, et al.,

15                    Defendants.

16

17   I.  Introduction

18          Plaintiff is a former state prisoner, proceeding pro se and in forma pauperis, with a civil

19   rights action under 42 U.S.C. § 1983.  Defendant Lin's motion for summary judgment or, in the

20   alternative, partial summary judgment, is before the court.  As discussed below, defendant Lin's

21   motion should be granted.

22   II.  Allegations/Complaint

23          Plaintiff alleges that Dr. Mariana Lotersztain, Dr. Wayne Scott, Dr. Neil Largoza, Martin

24   Kuersten, Dr. J. Lin, and S. Gates were deliberately indifferent to plaintiff's serious medical

25   needs by intentionally refusing to treat or properly treat plaintiff's broken finger, resulting in the

26   permanent disfigurement of his finger, as well as permanent loss of range of motion.  Plaintiff

27   also alleges that defendant Lotersztain refused to treat plaintiff's injuries in retaliation for

28   plaintiff's pending civil rights litigation against her.  (ECF No. 1 at 7.)  Additionally, plaintiff

1

1  raises various state law claims against defendants Dr. Mariana Lotersztain, Dr. Wayne Scott, Dr.

2  Neil Largoza, Martin Kuersten, Dr. Lin,[1] and S. Gates.

3  III.  Legal Standards for Summary Judgment

4      Summary judgment is appropriate when it is demonstrated that the standard set forth in

5  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

6  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7  judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

12  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

13  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

14  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

15  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

16  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

17  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

18  burden of production may rely on a showing that a party who does have the trial burden cannot

19  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

20  should be entered, after adequate time for discovery and upon motion, against a party who fails to

21  make a showing sufficient to establish the existence of an element essential to that party's case,

22  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

23  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

24  necessarily renders all other facts immaterial."  Id. at 323.

---

[1]  Dr. T. Lin was erroneously sued as Dr. J. Lin.  (ECF No. 55-1 at 5.)

[2]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1    Consequently, if the moving party meets its initial responsibility, the burden then shifts to

2    the opposing party to establish that a genuine issue as to any material fact actually exists.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4    establish the existence of such a factual dispute, the opposing party may not rely upon the

5    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6    form of affidavits, and/or admissible discovery material in support of its contention that such a

7    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

12   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

13   (9th Cir. 1987).

14        In the endeavor to establish the existence of a factual dispute, the opposing party need not

15   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

16   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

17   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

18   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

19   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

20   amendments).

21        In resolving a summary judgment motion, the court examines the pleadings, depositions,

22   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

23   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

24   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

25   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

26   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

27   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

28   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

1   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

2   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

5          By notice issued November 22, 2021 (ECF No. 55), plaintiff was advised of the

6   requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

7   Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v.

8   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

9   IV.  Facts

10         At all times relevant herein, plaintiff Michael Witkin was a state prisoner.

11         On December 23, 2017, while participating in a flag football game at the prison, plaintiff

12   fractured the fourth finger on his right hand.

13         Plaintiff reported to the prison's Correctional Treatment Center ("CTC") for treatment.

14         On December 26, 2017, plaintiff received an x-ray of the finger, which showed a

15   comminuted intraarticular fracture of the fourth proximal phalanx.  The x-ray also revealed mild

16   degenerative changes.

17         An offsite orthopedic referral was ordered.

18         On January 9, 2018, 17 days after the injury, plaintiff had a consultation with defendant

19   Dr. Lin.

20         Dr. Lin is a licensed physician and hand surgeon in private practice.  Dr. Lin has no

21   affiliation with the department of corrections and is not employed by any governmental entity.

22         Dr. Lin has no knowledge as to how his patients from correctional facilities are referred or

23   what the process is for them to retain a referral.

24         Plaintiff had one visit with Dr. Lin, on January 9, 2018.

25         At the January 9, 2018 visit, Dr. Lin took off plaintiff's plaster splint and examined

26   plaintiff's finger.

27         The examination of the finger revealed that the finger was swollen, without any rotational

28   deformity.

1      Dr. Lin also reviewed plaintiff's x-rays during the January 9, 2018 visit.

2      Dr. Lin's impression was a right ring finger proximal phalanx/PIP joint intra-articular

3  fracture, with slight displacement.  The fracture was 17 days old at the time Dr. Lin saw plaintiff.

4      Plaintiff met with Dr. Lin, expecting to proceed with the surgical option, closed reduction

5  and external fixation ("CREF").  Plaintiff was informed of the surgery and the risks.  Dr. Lin did

6  not recommend the CREF procedure.

7      Dr. Lin applied an Oval-8 splint.  Plaintiff was advised to stay in the splint for another

8  week and after that he could start gradual range of motion exercises.  He was instructed not to

9  expose the fracture site to excessive stress for two months.

10      Plaintiff was directed to return to see Dr. Lin if needed.

11      On January 17, 2018, plaintiff was seen by a prison nurse for a muscle strain experience

12  during a workout.  At this visit, plaintiff was concerned that his finger may not heal right and so

13  asked to see his primary care physician, Dr. Mo.

14      On March 15, 2018, plaintiff had an appointment with Dr. Mo.  Plaintiff thereafter wanted

15  to return to see Dr. Lin but contends that this request was denied.

16      Approximately 60 days after his visit with Dr. Lin, plaintiff resumed his normal workout

17  routine and returned to sports.

18  V.  The Parties' Positions

19      Defendant Dr. Lin

20      Defendant Lin contends that the undisputed facts and evidence demonstrate that the care

21  and treatment provided by Dr. Lin complied with the standard of care.  Dr. Lin examined

22  plaintiff's finger and the x-ray images; plaintiff sustained a comminuted and intra-articular

23  fracture of the fourth proximal phalanx, with degenerative changes.  Considering Dr. Lin's exam

24  findings, the x-ray report, and the history of the injury, Dr. Lin determined that surgery was

25  unlikely to provide a better result than splinting, and such determination was consistent with the

26  standard of care.  Dr. Burgar, defendant's expert, confirmed that such treatment complied with

27  the standard of care, and surgery on plaintiff's finger could have resulted in a worse outcome for

28  plaintiff; thus, splinting the finger was the preferred course of treatment.  (ECF No. 55-1 at 8-9.)

5

1    Dr. Lin argues that the evidence shows that Dr. Lin appropriately informed plaintiff of the option

2    of surgery or splinting, and that plaintiff chose splinting.  Indeed, plaintiff explained his decision

3    to proceed with splinting was based on Dr. Lin's opinion that surgery was not more likely to

4    provide a better result.  (Pl.'s Dep. at 84-85.)  Dr. Lin gave plaintiff instructions for follow-up if

5    needed, but no further contact was received.  While plaintiff is unhappy with the results, the

6    "described finger deformation, loss of function, and improper healing was more likely than not a

7    result of the fracture and not Dr. Lin's medical care," as opined by expert Dr. Burgar.

8         In addition, Dr. Lin did not refuse or fail to provide care to plaintiff.  Rather, Dr. Lin

9    evaluated plaintiff's finger and provided splinting to plaintiff's finger based on his medical

10   judgment.  Plaintiff adduced no evidence demonstrating that at the time Dr. Lin recommended

11   splinting that such recommendation subjected plaintiff to a substantial risk of serious harm or, if it

12   did, that Dr. Lin knew that it did.  Further, if it subsequently became clear that splinting would

13   not provide an ideal outcome, Dr. Lin was never advised that plaintiff required follow-up.

14        Plaintiff's Opposition

15        Plaintiff contends that defendant Lin fails to resolve two pivotal disputed questions of

16   material fact.  First, plaintiff argues that defendant Lin's January 9, 2018 notes (ECF No. 55-2 at

17   103), show that plaintiff chose the CREF option, and that medical records show plaintiff selected

18   the CREF treatment option (ECF No. 90-3 at 73).  Plaintiff points to Dr. Scott's interrogatory

19   response that, based upon information and belief, plaintiff "chose the closed reduction and

20   external fixation ('CREF') treatment option, and an oval splint was prescribed."  (ECF No. 89-3

21   at 23.)  Plaintiff argues that because the court must take as true plaintiff's evidence that he chose

22   the CREF treatment option, Dr. Burgar's opinion sheds no light on the propriety of defendant

23   Lin's actions and medical judgment," leaving unanswered whether Dr. Lin met the standard of

24   care or was deliberately indifferent.  (ECF No. 90 at 2.)

25        Second, plaintiff argues that Dr. Lin earlier took the position that he complied with the

26   standard of care when he recommended that plaintiff have surgery to repair the finger.  (ECF No.

27   90 at 3, citing ECF No. 76 at 15-16.)  Plaintiff claims Dr. Lin's current position is that at the time

28   of treatment, Dr. Lin determined that "surgery was not more likely to provide a better result than

1     splinting was correct, and consistent with the standard of care." (ECF No. 90 at 3, quoting Burgar

2     Decl. ¶ 4.)  Finally, plaintiff argues that the court should give no weight to Burgar's opinion

3     because it was not based on the true facts, and rests on assumptions not supported by the

4     evidence.  (ECF No. 90 at 3-4) (citing Stephens v. Union Pac. R.R. Co., 935 F.3d 852, 856 (9th

5     Cir. 2019); see also Edmo v. Corizon, Inc., 935 F.3d 757, 787 (9th Cir. 2019).)

6             Defendant's Reply

7             Defendant counters that plaintiff fails to address the key issues pertinent to the motion and

8     fails to present material evidence or any legitimate basis to deny summary judgment.  First,

9     plaintiff failed to offer expert testimony concerning the standard of care or causation or damages.

10    Plaintiff's effort to evade the required expert testimony by challenging the foundation for Dr.

11    Burgar's opinion is unavailing.  Dr. Burgar's expert opinion is based on the totality of the record,

12    including the admissions and statements plaintiff made in his deposition, and is entitled to full

13    weight.  Second, plaintiff adduced no evidence demonstrating that when defendant Dr. Lin

14    recommended splinting that such recommendation subjected plaintiff to a substantial risk of

15    serious harm or, if it did, that Lin knew it did.  Plaintiff does not dispute that Dr. Lin examined

16    plaintiff's finger and the x-rays, and in his deposition, plaintiff admitted that Dr. Lin told plaintiff

17    about surgical options, explained the risks, but made the reasoned recommendation for the

18    splinting.

19    VI.  Legal Standards

20          "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

21    must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

22    1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

23    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

24    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

25    (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting

26    McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations

27    marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th

28    Cir. 1997) (en banc)).

1    By establishing the existence of a serious medical need, a prisoner satisfies the objective

2    requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834

3    (1994).  Deliberate indifference is established only where the defendant subjectively "knows of

4    and disregards an excessive risk to inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051,

5    1057 (9th Cir. 2004) (citation and internal quotation marks omitted); Farmer, 511 U.S. at 837.

6    Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond

7    to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  Jett, 439

8    F.3d at 1096 (citation omitted).  To be found liable under the Eighth Amendment, "the official

9    must both be aware of facts from which the inference could be drawn that a substantial risk of

10   serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "If a [prison

11   official] should have been aware of the risk, but was not then the [official] has not violated the

12   Eighth Amendment, no matter how severe the risk."  Gibson v. Cty of Washoe, 290 F.3d 1175,

13   1188 (9th Cir. 2002), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d

14   1060, 1076 (9th Cir. 2016).

15       "Typically, a difference of opinion between a physician and the prisoner -- or between

16   medical professionals -- concerning what medical care is appropriate does not amount to

17   deliberate indifference."  Edmo v. Corizon, Inc., 935 F.3d 757, 786 (9th Cir. 2019) (citations,

18   quotations and brackets omitted).  "But that is true only if the dueling opinions are medically

19   acceptable under the circumstances."  Edmo, 935 F.3d at 786 (citation omitted).  To determine

20   whether the treatment was medically acceptable, courts must consider "the record, the judgments

21   of prison medical officials, and the views of prudent professionals in the field. . . ."  Id.

22   "Accepted standards of care and practice within the medical community are highly relevant in

23   determining what care is medically acceptable and unacceptable."  Id.

24       In order to recover damages against a prison official for deliberate indifference, an inmate

25   must prove that the indifference "was the actual and proximate cause of the deprivation of the

26   inmates' eighth amendment right to be free from cruel and unusual punishment."  Leer v.

27   Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  Delay in medical treatment generally only

28   constitutes deliberate indifference if it causes further harm.  See McGuckin, 974 F.2d at 1059-61

8

1   ("[When] a claim alleges 'mere delay of surgery,' a prisoner can make 'no claim for deliberate

2   medical indifference unless the denial was harmful.'") (citation omitted).

3   VII.  Discussion

4            Plaintiff's Injured Finger

5            The parties do not dispute that plaintiff's injured finger constitutes a serious medical need,

6   thus meeting the objective element.  Farmer, 511 U.S. at 834.

7            Alleged Change in Position

8            Plaintiff's argument that Dr. Lin changed position, earlier contending that he complied

9   with the standard of care by recommending plaintiff have surgery to repair the finger, is not

10  supported by the record.  Plaintiff cites to a copy of Dr. Lin's requests for admissions propounded

11  to plaintiff.  (ECF No. 76 at 15-16.)[3]  But plaintiff fails to demonstrate how such discovery

12  requests constitute a change in position.

13           Dr. Burgar's Opinion

14           Plaintiff's effort to challenge the foundation of Dr. Burgar's expert opinion is unavailing.

15  As was explained in the June 23, 2022 order denying plaintiff's motion to exclude Dr. Burgar's

16  expert testimony, Dr. Burgar has specialized knowledge as an orthopedic specialist, is board

17  certified in orthopedic surgery and hand surgery, was fellowship-trained in hand and

18  microsurgery, and has over 17+ years of surgical experience.  (ECF No. 72 at 7, citing 55-2 at

19  123.)  Dr. Burgar's medical training and experience provides her the knowledge to opine whether

20  Dr. Lin's care and treatment were within the community standard of care.  Dr. Burgar reviewed

21  plaintiff's medical records from DVI and Dr. Lin's practice, plaintiff's complaint and deposition,

22  as well as Dr. Lin's declaration, and after such review used her medical judgment to form her

23  opinion on Dr. Lin's treatment of plaintiff on January 9, 2018.  Plaintiff's objection as to the

24  foundation for Dr. Burgar's opinion is overruled.

25

26  [3]  Plaintiff refers to this alleged change in position in disputing defendant's claim that he was not
    deliberately indifferent to plaintiff's serious medical needs (ECF No. 90-1 at 3, citing ECF No. 76
27  at 16.)  The request for admission reads:  "Admit that Dr. Lin recommended that you have
    surgery to repair your finger."  (ECF No. 76 at 16.)  Asking such a question is not the same as Dr.
28  Lin claiming that he recommended plaintiff have surgery.

1          The CREF Procedure

2          Plaintiff claims he chose the CREF procedure, relying on two medical records.  (ECF No.

3    55-2 at 103, 90-3 at 73.)  Such reliance is unavailing for several reasons.

4          First, as a layperson, plaintiff is not qualified to offer an interpretation of his medical

5    records.  See Fed. Rule of Evidence 701.  An expert witness is required to interpret these medical

6    records.  See Fed. Rule of Evid. 702.

7          Second, as argued by defendant, plaintiff testified that despite seeing Dr. Lin and

8    expecting to proceed with the surgical option, plaintiff was informed of the surgical option, the

9    risks, and agreed to the splinting.  Plaintiff testified that at the time of the appointment, plaintiff

10   essentially deferred to Dr. Lin's expertise (Pl.'s Dep. at 84-85 (ECF No. 55-2 at 64-65) ("I

11   thought I'm seeing an expert and I'm going to be going with whatever he recommended.")  Even

12   plaintiff's declaration states that "because defendant Lin explained that surgery was no longer a

13   viable option, [plaintiff] allowed [Lin] to proceed with immobilizing [the injured] finger with a

14   splint."  (ECF No. 90-2 at 4.)  Whether or not plaintiff thought he chose the CREF procedure, it is

15   undisputed that Dr. Lin did not recommend that plaintiff receive the CREF procedure.

16         Third, even if plaintiff chose the CREF option over Dr. Lin's recommended splinting

17   procedure, Dr. Burgar opined that Dr. Lin's choice in splinting the finger rather than performing

18   the CREF procedure was within the standard of care.  Plaintiff provided no expert medical

19   opinion to the contrary.

20         Finally, it is undisputed that plaintiff did not return to see Dr. Lin, who treated plaintiff on

21   only one occasion.

22         No Evidence of Deliberate Indifference

23         Further, plaintiff provided no additional facts or evidence demonstrating that Dr. Lin's

24   actions in splinting the finger constituted deliberate indifference in treating plaintiff's injured

25   finger.  At the time of the appointment, it is undisputed that Dr. Lin did not believe the CREF

26   procedure "would, more likely than not, provide a better outcome than splinting."  (ECF No. 55-2

27   at 75.)  Expert witness Dr. Burgar mirrored Dr. Lin's conclusion, and further found that surgery

28   "could have resulted in a worse outcome."  (ECF No. 55-2 at 120.)  Plaintiff adduced no expert

1    medical opinion to the contrary.

2          Plaintiff adduced no facts or evidence demonstrating that when Dr. Lin splinted plaintiff's

3    finger, such action subjected plaintiff to a substantial risk of serious harm or, if it did, that Dr. Lin

4    knew it did.  Farmer, 511 U.S. at 837.  Plaintiff does not dispute that Dr. Lin examined plaintiff's

5    finger and the x-rays, and in his deposition, plaintiff admitted that Dr. Lin told plaintiff about

6    surgical options, explained the risks, but made the reasoned recommendation for the splinting.

7    Absent evidence not presented here, the undersigned cannot find that defendant Dr. Lin was

8    deliberately indifferent to plaintiff's serious medical needs on January 9, 2018.

9    VIII.   State Law Claims

10          Regarding plaintiff's state law claims for medical malpractice (professional negligence)

11   and negligent infliction of emotional distress, defendant argues that plaintiff failed to provide

12   expert testimony demonstrating that defendant Lin's medical treatment fell outside the standard

13   of care.  Defendant Lin presented the declaration of medical expert Dr. Burgar who opined that

14   Dr. Lin's care complied with the medical standard of care.  Plaintiff failed to provide any expert

15   testimony contrary to that provided by Dr. Burgar.

16          In his opposition, plaintiff did not address the merits of his state law claims or offer an

17   expert medical opinion as to the standard of care.  Plaintiff simply argues that the court should

18   assign no weight to Dr. Burgar's opinion because it "fails to address the factual scenario in this

19   case."  (ECF No. 90 at 4.)

20          In reply, defendant reiterates that California law requires that plaintiff offer expert

21   testimony concerning the standard of care, causation and damages.  (ECF No. 92.)

22          Because the standard of care can only be established through expert testimony,

23   Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988), and plaintiff failed to offer such expert

24   testimony, defendant Dr. Lin is entitled to summary judgment on plaintiff's state law claims.

25   Absent such expert opinion, the court need not reach plaintiff's arguments or issues raised in his

26   opposition.  Nevertheless, plaintiff's contention that he does not need an expert because Dr.

27   Burgar does not have sufficient foundation for her opinion is not well-taken.  First, plaintiff is

28   required to present expert testimony to demonstrate defendant Lin's medical care fell below the

11

community standard of care.  Hutchinson, 838 F.2d 390.  Second, as argued by defendant, Dr.

Burgar's expert opinion is based on a sufficient foundation because Dr. Burgar reviewed the

record in this case, including plaintiff's medical records, and admissions and statements made in

his deposition.  Finally, plaintiff's motion to exclude Dr. Burgar's opinion was denied on June 23,

2022, finding that "[t]he record amply demonstrates that Dr. Burgar's opinion is reliable based on

her training, knowledge and over seventeen years of specialized experience in orthopedic surgery

and hand surgery."  (ECF No. 72 at 9, citing Primiano v. Cook, 598 F.3d 558, 565 (9th Cir.

2010).

        Therefore, defendant Dr. Lin is entitled to summary judgment on plaintiff's state law

claims.

IX.  Conclusion

        Accordingly, IT IS HEREBY RECOMMENDED that defendant Dr. Lin's motion for

summary judgment (ECF No. 55) be granted.

        These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 14, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/witk0406.msj.Lin

12