UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON WITKIN, | No. 2:19-cv-00406-DJC-KJN |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| MARIANA LOTERSZTAIN, et al., | |
| Defendants. | |

     This section 1983 action previously proceeded to trial based on Plaintiff Michael Aaron Witkin's claims against Defendant Mariana Lotersztain for deliberate indifference to Plaintiff's serious medical needs in violation of his Eighth Amendment rights and retaliation in violation of his First Amendment rights.  At the conclusion of trial, the Jury found Defendant Lotersztain not liable for either claim.  Plaintiff has filed a Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50 (JMOL Mot. (ECF No. 159)) and a Motion for New Trial under Rule 59 (New Trial Mot. (ECF No. 164)).[1]

     For the reasons stated below, Plaintiff's Motions for Judgment as a Matter of Law and New Trial are denied.

---

[1] Plaintiff also brings several additional motions – specifically three motions for sanctions and a motion to strike – which are addressed by this Order.  (*See* ECF Nos. 160, 176, 181, 182.)

1

## BACKGROUND

The full facts and history of this case are well known to the Court and parties. In short, Plaintiff proceeded to trial on claims that Defendant Lotersztain had violated his Eighth Amendment rights by not providing him with adequate medical treatment for a broken finger he sustained while incarcerated in California state prison. Plaintiff also claimed that Defendant Lotersztain failed to provide adequate treatment in retaliation for Plaintiff filing an earlier lawsuit against Defendant Lotersztain, thus violating his First Amendment rights. Defendant Lotersztain denied these claims.

Trial on this matter began on January 6, 2025. (ECF No. 146.) At the close of Defendant's case-in-chief, Plaintiff moved for judgment as a matter of law under Rule 50(a). (ECF No. 152.) At that time, the Court denied Plaintiff's motion. (*Id.*) The presentation of evidence concluded on the third day of trial, January 8, 2025. (*Id.*) Jury deliberations began and ended on that same day with the Jury returning a verdict in favor of Defendant. (*Id.*)

Briefing is now complete for Plaintiff's Motion for New Trial under Federal Rule of Civil Procedure 59 (New Trial Mot.; New Trial Opp'n (ECF No. 166); New Trial Reply (ECF No. 174)) and Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) (JMOL Mot.; JMOL Opp'n (ECF No. 165); JMOL Reply (ECF No. 173)). The matter was taken under submission pursuant to Local Rule 230(g).

## RULE 50(b) MOTION

### I. Legal Standard

The standard to grant a motion for judgment as a matter of law under Rule 50(b) is "very high." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). To overturn a jury's verdict by granting such a motion request there be "no legally sufficient basis for a reasonable jury to find for that party on that issue." *Id.* (internal citations and quotations omitted) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000)). The Court may not substitute its view of the evidence for the

jury's, make credibility determinations, or weigh the evidence and must draw all inferences in favor of the non-moving party. *Id.*; *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). Evidence for the moving party that the jury need not believe should be disregarded. *Costa*, 299 F.3d at 859 (quoting *Reeves*, 530 U.S. at 151). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

A renewed motion under Rule 50(b) must be preceded by a Rule 50(a) motion made before the case was submitted to the jury. *Id.* "If the judge denies or defers ruling on the [Rule 50(a)] motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Id.* As a renewed motion, the grounds for judgment made in a Rule 50(b) motion are "limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.*

## II. Discussion

Plaintiff's Renewed Motion for Judgment as a Matter of Law argues that the evidence at trial was such that Defendant could not prevail, even when viewing the evidence in the light most favorable to Defendant. Plaintiff argues that he faced a serious medical need as a matter of law and that Defendant's failure to splint Plaintiff's finger amounted to deliberate indifference that caused Plaintiff harm.[2]

### A. Serious Medical Need

The Court need not reach the issue of whether Plaintiff's broken finger was, as a matter of law, a serious medical need. As was discussed during trial, the Court found cases where a broken finger was found to constitute a serious medical need at the pleading or summary judgment stage. At that time, the Court could not find a case

---

[2] In his Reply, Plaintiff also argues that Defendant's Opposition to his Motion for Judgment as a Matter of Law was untimely and that Plaintiff's Motion should be treated as unopposed. (JMOL Reply at 2.) Plaintiff is correct that Defendant's Opposition was untimely by five days. Defendant is admonished for their failure to file a timely Opposition. As Plaintiff has had a full opportunity to file a Reply to Defendant's Opposition, there is little to no prejudice to Plaintiff.

suggesting that, as a matter of law, a fracture <u>always</u> constituted a serious medical need such that the question must be taken away from the Jury.  In ruling on Defendant's Rule 50(a) Motion the Court did note that it suspected it might constitute a serious medical need.  (1/7/25 P.M. Trial Tr. (ECF No. 171) at 356:24–357:3.)  The Court denied Defendant's Motion in part on this basis subject to renewal after trial when further legal research on this issue could be performed.  (*Id.*)  But this issue is ultimately irrelevant at this point given that the Jury also did not find that Plaintiff had proven the other elements of his Eighth Amendment claim.

To prove a deliberate indifference to medical need claim, Plaintiff needed to not only show that he faced a serious medical need but also that Defendant Lotersztain was deliberately indifferent to that need and that he was harmed as a result.  The Court instructed the Jury to answer whether Plaintiff had proven his by preponderance of the evidence each element of Plaintiff's Eighth Amendment deliberate indifference to medical need claim.  The Jury answered "No" for all elements. (Verdict Form (ECF No. 150) at 1–2.)  Thus, even if Plaintiff is correct that a broken finger constituted a serious medical need as a matter of law, the Jury's verdict would still stand unless a reasonable juror could not have found for Defendant as to those other elements.  Plaintiff cannot show that to be the case here.  As such, the Court will decline to address whether Plaintiff's broken finger constituted a serious medical need as a matter of law as it need not do so here.

**B.  Deliberate Indifference and Harm**

During trial, there was substantial testimony that Defendant Lotersztain provided Plaintiff with adequate care for his finger.  Plaintiff is correct that there was some testimony that it would have been medically preferable for Plaintiff's fingers to be splinted by Defendant, not by Plaintiff.  (1/7/25 P.M. Trial Tr. at 350:5–22.)  However, there was also contradictory testimony that it would be acceptable for Plaintiff to splint his finger. (*Id.* at 352:20–353:2.)  Moreover, Plaintiff and Defendant provided conflicting testimony as to whether Plaintiff had rejected Defendant's offer to

4

splint his finger and instead elected to do it himself.  (1/6/25 Trial Tr. (ECF No. 168) at 195:10–19; *id.* at 211:24–212:17; 1/7/2025 A.M. Trial Tr. (ECF No. 169) at 243:6–22; *id.* at 254:4–10; 1/7/25 P.M. Trial Tr. at 362:10–363:8.)  Thus, the evidence was such that there existed a legally sufficient basis for a reasonable jury to find in Defendant's favor. While the evidence presented may have also supported a jury verdict in his favor, that a jury <u>could</u> find in Plaintiff's favor does not render a jury verdict in Defendant's favor unreasonable.  It is up to the Jury to determine the credibility of witnesses and what weight to give to the testimony they hear.  *Proffit v. United States*, 316 F.2d 705, 707 (9th Cir. 1963) ("The credibility of witnesses and the weight to be given their testimony is for the jury[.]")  Simply put, there was testimony from which both parties could theoretically prevail based on the Jury's determinations; the Jury simply found that Defendant's evidence was more persuasive and that Defendant should prevail under the evidence presented.

  Similarly, the testimony of trial witnesses supported a finding that Plaintiff was not harmed by the actions of Defendant and that the damage to Plaintiff's finger was the result of the injury itself, not the treatment provided by Defendant.  (1/8/25 Trial Tr. (ECF No. 170) at 393:24–394:11.)  Thus, the Jury could also reasonably conclude that even if Defendant was deliberately indifferent, Defendant's acts or failures to act did not harm Plaintiff.  As a result, a judgment as a matter of law in Plaintiff's favor is inappropriate in this case.

  Plaintiff's briefing characterizes the testimony of witnesses as Plaintiff viewed and understood that testimony.  For example, Plaintiff states that "[b]oth [Dr. Younger and Dr. Kuersten] viewed [Defendant's actions] as the most obvious violation of the community standard of care that they had ever seen" and that it was a "flagrant of a violation of standard of care . . . ."  (JMOL Reply at 3.)  Neither Dr. Younger nor Dr. Kuersten testified that any of Defendant's actions violated the community standard of care let alone that it was an egregious violation.  This may represent Plaintiff's understanding of the intent behind their testimony.  However, it is the Jury's

interpretation of the evidence – not Plaintiff's – that determines who prevails at trial. While Plaintiff may disagree with the result and feel that his version of events is the correct one, where there is conflicting testimony it is the Jury's province to determine the truth.  It is not within this Court's power to second guess the Jury's assessment in that regard.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1977); *see also Bareman v. Donovan*, 131 F.2d 759, 763 (9th Cir. 1942).

Accordingly, Plaintiff has not established that he is entitled to judgment as a matter of law.  Plaintiff's Renewed Motion for Judgment as a Matter of Law (ECF No. 159) is denied.

## RULE 59 MOTION

### I. Legal Standard

Rule 59(a) partially provides that after a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  *See also Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003) (internal citations and quotations removed).  "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

### II. Discussion

The first argument raised in Plaintiff's Motion for a New Trial under Rule 59 is largely the same as the one raised in Plaintiff's Renewed Motion for Judgment as a Matter of Law under Rule 50(b). (*See* New Trial Mot. at 7–8.)  For the same reasons discussed above, Plaintiff's New Trial Motion on this basis is denied.  Plaintiff also again argues that Plaintiff's broken finger was, as a matter of law, a serious medical need. (*Id.* at 19.)  As noted above, the Court need not address this issue as even if the Court found that this Plaintiff did face a serious medical need as a matter of law, this would not alter the ultimate result as the Jury found that Defendant was not

deliberately indifferent to that need and that Defendant's acts or failure to act did not harm Plaintiff.

The remainder of Plaintiff's New Trial Motion is focused in various forms on statements Plaintiff made in a "SMART Goal Planning" document that Defendant introduced at trial. That document was admitted into evidence by the Court as impeachment evidence. Plaintiff's complaints here are numerous but generally fall into two categories. First, Plaintiff objects to the relevance and admissibility of statements made by Plaintiff in the document as well as the admissibility of the document itself. Second, Plaintiff contends that Defendant's Counsel engaged in misconduct by placing the document in the pocket of one of the evidence binders that were sent to the Jury.

Many of Plaintiff's arguments concerning this SMART Goal Planning document use grandiose language, suggesting that the placement of this document in the evidence binder was "an attack on the integrity of the federal judicial system[,]" suggesting that CDCR schemed to violate Plaintiff's due process rights using the document, claiming that CDCR is trying to "seize control of Article III Judicial Power," alleging that Defendant's Counsel's conduct in this case is "some of the most egregious attorney misconduct in the history of our country," and more. (*See* New Trial Mot. at 8–19.) The Court will address the core concerns Plaintiff raises about the relevance and admissibility of this evidence as well as the manner in which it was provided to the Jury. The Court will not address the extreme and unsupported accusations used by Plaintiff as they lack are wholly without merit. The Court notes that Plaintiff's arguments are not helped by such wild and unsupported accusations as they make it challenging to discern between potentially meritorious and frivolous arguments.

**1. Relevance and Admissibility**

Plaintiff first argues that the evidence that he had stated he wanted to "knock down CDCR for about $250,000" should have been excluded as irrelevant under

1   Federal Rules of Evidence 401 and 402. As the Court explained during trial, evidence
2   that shows the bias or improper motive of a witness is permissible and relevant to the
3   credibility of a witness. *See United States v. Abel*, 469 U.S. 45, 51 (1984); *see also*
4   *Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281, 1298 (9th Cir. 1986); *McClure v. Country*
5   *Life Ins. Co.*, 326 F. Supp. 3d 934, 951 (D. Ariz. 2018). It was on this basis that earlier in
6   the trial the Court had permitted Plaintiff to question Defendant Lotersztain regarding
7   her current compensation and the potential impacts on her career (and thus her
8   compensation) if she was found to have acted with deliberate indifference. When
9   Defendant's Counsel questioned Plaintiff during his cross-examination about whether
10  he had stated on a SMART Goal Planning sheet that he wished to "knock down CDCR
11  for about $250,000" the Court permitted this questioning on the same basis that
12  Plaintiff was permitted to ask about Defendant's salary: it was relevant to Plaintiff's
13  potential motives and biases as a witness. (1/7/2025 A.M. Trial Tr. at 292:12–296:18.)
14          Plaintiff further argues that the evidence should have been excluded under
15  Federal Rule of Evidence 403. (New Trial Mot. at 14–15.) It is certainly true that the
16  evidence that Plaintiff expressed an intent to "knock down CDCR for about $250,000"
17  is prejudicial to Plaintiff. However, the prejudice of that evidence being presented to
18  the Jury did not outweigh the probative value of that evidence as to Plaintiff's
19  potential motive and bias as a witness.[3] Plaintiff's suggestion that this evidence
20  constituted improper character evidence (New Trial Mot. at 15–17) is also incorrect.
21  This evidence was not presented to establish that Plaintiff had a particular character or
22  to show that Plaintiff acted in accordance with that character in this instance. *See* Fed.
23  R. Evid. 404(a)(1). Instead, it was introduced to question the motivations behind
24  Plaintiff's testimony as a witness.

---

[3] As discussed below, the Court attempted to mitigate any prejudice by suggesting Counsel for Defendant ask questions about Plaintiff's relevant statements in the document rather than introducing it into evidence. (1/7/2025 A.M. Trial Tr. at 293:3-4.) It was only when Plaintiff suggested he didn't know if he had filled out such a document (*id.* at 293:7–12), that the Court permitted it to be introduced for impeachment (*id.* at 293:13–296:18).

1    Plaintiff also suggests that this evidence was inadmissible as it framed Plaintiff
2    as a litigious individual with a history of chronic litigation against CDCR.  (New Trial
3    Mot. at 10–14.)  However, unlike many cases Plaintiff cites, Defendant was not simply
4    relying on the fact that Plaintiff had filed other grievances and lawsuits.  Instead,
5    Defendants relied on the information in a document in which Plaintiff expressed a
6    specific goal of filing "20 lawsuits" in order to "knock down CDCR for about
7    $250,000[.]"  Given the specific nature of the document as a statement of Plaintiff's
8    goals, it is highly relevant and probative to Plaintiff's motivations for his testimony.
9    Additionally, when Defendant's Counsel questioned Plaintiff about his
10   statements, Counsel did not mention Plaintiff's stated intent to file "20 lawsuits" or that
11   Plaintiff had filed other lawsuits.  (1/7/2025 A.M. Trial Tr. at 292:12–294:6.)  Instead,
12   Counsel only question regarding the content of the SMART Goal Planning sheet was if
13   Plaintiff had stated he wanted to "knock down CDCR for about $250,000[.]"
14   Defendant's Counsel's questioning about the document and its contents in general
15   were limited; counsel only asked five questions about the document in total.
16   (1/7/2025 A.M. Trial Tr. at 292:12–294:6.)  While in closing Defendant's Counsel did
17   mention Plaintiff's other statement that he wanted to complete the litigation of 20
18   cases against CDCR, Plaintiff raised no objection at that time or at any time before the
19   present motions before the Court.[4]  (1/8/2025 Trial Tr. at 499:12-22.)  Plaintiff's failure
20   to raise any objection is fatal to any contention that this portion of Defendant's closing
21   argument was not permissible.  *See Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*,
22   785 F.2d 656, 658 (9th Cir. 1986) (holding that the failure to objection comments
23   made in closing argument before the jury began its deliberations bars claims based
24   on the propriety of those remarks); *see also Offutt v. Georgia-Pac. Gypsum LLC*, No.

---

[4] Plaintiff also argues that "[t]he defense's entire closing argument was . . . centered on the prejudicial and inadmissible document."  (New Trial Mot. at 4.)  This is an inaccurate statement.  Out of the approximately twelve pages of the transcript that contain Defendant's Counsel's closing argument, Counsel's discussion of the contents of the SMART Goal Planning sheet is approximately sixty-one words and three sentences.  (1/8/2025 Trial Tr. at 499:17–22.)

9

21-35624, 2022 WL 1955740, at *2 (9th Cir. June 6, 2022) (finding that an objection to comments made in closing argument was valid because it was made before the jury began deliberations).

Finally, Plaintiff objects that the SMART Goal Planning sheet was not admissible as an exhibit as it was not disclosed to him in advance of trial.  Federal Rule of Civil Procedure 26(a)(3) governs the pretrial disclosure obligations of the parties.  That rule provides that "[i]n addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial <u>other than solely for impeachment</u>[.]"  Fed. R. Civ. P. 26(a)(3) (emphasis added).[5]  When Defendant's Counsel first questioned Plaintiff about his response on the SMART Goal Planning sheet, the Court did not allow the document into evidence but rather suggested Defense Counsel simply ask Plaintiff about the contents of the document.  (1/17/2025 A.M. Trial Tr. at 293:3-4.) ("Why don't you ask him questions and see if we need to have it introduced.") However, given that Plaintiff was unresponsive to further questioning (*id.* at 293:7-12), Defense counsel then impeached Plaintiff using the SMART Goal Planning sheet, and it was on this basis that the Court granted Defendant's request to admit the document (*id.* 293:13-296:18).

Plaintiff himself appears to partially concede that this document may have been admissible for impeachment purposes.  (New Trial Mot. at 18 ("[N]o reasonable mind would conclude that this evidence would be admissible for any purpose, <u>except possibly impeachment</u> after a thorough and proper analysis of the relevant rules was conducted by this Trial Court." (emphasis added)).)  While Plaintiff complains that the SMART Goal Planning sheet was not disclosed before trial, that document was solely used for impeachment purposes when Plaintiff would not answer if he had stated he wanted to "knock down CDCR for about $250,000[.]"  As such, it was not subject to

---

[5] The initial disclosure requirement in Rule 26(a)(1) similarly requires disclosure of documentary evidence "unless the use would be solely for impeachment[.]"

10

the disclosure requirements for evidence in advance of trial under Rule 26.[6] Plaintiff was also fully aware of this document; Plaintiff's statements in the SMART Goal Planning document were the basis of motions to revoke IFP and dismiss in several of Plaintiff's suits against CDCR employees in this district. *See, e.g.*, *Witkin v. Thomas*, 2:22-cv-01310, ECF No. 23; *Witkin v. Cook*, 2:20-cv-02355, ECF No. 61. While those motions have largely been denied, Plaintiff has opposed those motions and plainly knew about this document and his alleged statements therein.

Given the above, the SMART Goal Planning document and its contents were relevant and admissible evidence. The admission of that document was not in error and does not warrant a new trial.

### 2. Placement of the Exhibit in Jury Binder

Plaintiff also takes issue with the placement of the SMART Goal Planning document within the exhibit binder provided to the Jury. At the conclusion of trial, the Court has each party prepare a binder of their admitted exhibits. The parties then swap binders to confirm that the exhibits included by the opposing are appropriate before turning them over to the Court's Courtroom Deputy. The Courtroom Deputy then has each party confirm that the binders are appropriately prepared and provide a signature to that effect. This is the exact series of events that also occurred at the end of trial in this case.

Both parties prepared their exhibit binders. Due to the fact that the SMART Goal Planning sheet was used for impeachment and was not in the original exhibit binder, it was not hole-punched so it was placed in the back folder of Defendant's binder of exhibits instead. The parties then swapped binders. Plaintiff confirmed that the exhibit binders contained the appropriate exhibits and could be provided to the

---

[6] In Plaintiff's Motion, he cites cases discussing the requirement that the prosecution in criminal cases disclose the evidence discussed in Rule 404(b) before trial. (Mot. at 18 (citing *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999)).) This was not a criminal action so the requirements for disclosure in Federal Rule of Evidence 404(b)(3) do not apply and these cases are not relevant.

Jury. Both Defendant's Counsel and Plaintiff signed the Admitted Exhibit List confirming this to be the case as can be seen here:

> At the conclusion of the evidentiary portion of trial, Counsel prepared the exhibit binders containing the exhibits admitted during trial (listed above) and confirmed their contents for provision to the deliberating jurors.
>
> DATED: 1.8.25
> Michael Aaron Witkin
> IN PROPRIA PERSONA
>
> DATED: 1/8/2025
> Jason Cale
> ATTORNEY FOR DEFENDANT

(ECF No. 154 at 3.)

As an admitted exhibit, the inclusion of the SMART Goal Planning document in the exhibit binder was not a mistake or the product of misconduct. Plaintiff's express approval of the exhibit binder before it was provided to the Jury and the Court's control of the binder from that point on nullifies any argument that how the binder was prepared was inappropriate.[7] The Court reiterates that this was an admitted exhibit that was properly included in the binder of Defendant's exhibits. Plaintiff's concerns regarding the placement of the document within the binder could have been raised contemporaneously but were not. Plaintiff's present complaints, raised well after they can be addressed, are not meritorious.

---

[7] Two of Plaintiff's Motions for Sanctions effectively raise identical arguments to those found in the Motion for New Trial. (See ECF Nos. 160, 176.) Those Motions are denied on the same basis. Plaintiff's Third Motion for Sanctions seeks sanctions based on the limited nature of Defendant's Opposition to Plaintiff's Motion for New Trial. (ECF No. 182.) Plaintiff has filed numerous lengthy and repetitive post-trial motions before the Court. Counsel's summary response to arguments previously addressed is not worthy of sanctions under Rule 11. Plaintiff's Motion for Sanctions (ECF No. 182) is thus denied. Plaintiff's Motion to Strike Counsel's declaration is also denied as Counsel's declaration was not improper. (ECF No. 181.)

1    Plaintiff has thus not raised a valid reason for the Court to order a new trial in
2 this action. As such, Plaintiff's Motion for New Trial under Rule 59 (ECF No. 164) is
3 denied.

**CONCLUSION**

Accordingly, for the reasons stated above IT IS HEREBY ORDERED that:

1. Plaintiff's Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) (ECF No. 159) is DENIED;
2. Plaintiff's Motion for New Trial under Federal Rule of Civil Procedure 59 (ECF No. 164) is DENIED;
3. Plaintiff's Motions for Sanctions (ECF Nos. 160, 176, 182) are DENIED; and
4. Plaintiff's Motion to Strike (ECF No. 181) is DENIED.

IT IS SO ORDERED.

Dated:   **June 5, 2025**

/s/ Daniel J. Calabretta
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – witkin19cv00406.50&59